**UNITED STATES of America, Appellee,**

v.

**Louis MARGIOTTI, Jr., Defendant–Appellant.**

**No. 740, Docket 95–1424.**

United States Court of Appeals, Second Circuit.

Argued Jan. 11, 1996.

Decided June 10, 1996.

John P. Tavana, Assistant United States Attorney for the District of Vermont, Burlington, Vermont (Charles R. Tetzlaff, United States Attorney, David V. Kirby, Assistant United States Attorney for the District of Vermont, of counsel), for appellee.

Thomas A. Zonay, Rutland, Vermont (Charles C. Humpstone, Carroll, George & Pratt, on the brief), for defendant-appellant.

Before: VAN GRAAFEILAND, MINER, and CABRANES, Circuit Judges.

PER CURIAM.

Defendant Louis Margiotti, Jr. appeals from a judgment of conviction entered on July 10, 1995, following his plea of guilty to one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The United States District Court for the District of Vermont (J. Garvan Murtha, *Chief Judge*) sentenced Margiotti principally to forty-one months imprisonment, the sentence to run consecutively to an undischarged term of state imprisonment. Margiotti claims that at sentencing the court (1) did not comply with Federal Rule of Criminal Procedure 32(c)(3)(C), requiring the court to afford a defendant an opportunity to speak prior to imposing sentence; and (2) failed to give appropriate consideration to the policy statement set forth at § 5G1.3(c) of the United States Sentencing Guidelines and its accompanying commentary.

## I. BACKGROUND

In an indictment filed August 11, 1994, the government charged Margiotti with three counts of possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of making false statements to purchase a firearm, in violation of 18 U.S.C. § 922(a)(6). On January 16, 1995, Margiotti executed a plea agreement with the United States in which he undertook to plead guilty to one count under §§ 922(g)(1) and 924(a)(2). The government agreed that it would drop the remaining counts and would recommend to the court that Margiotti receive a sentence at the low end of the applicable range under the Sentencing Guidelines. Margiotti entered his guilty plea on January 30, 1995, and he was sentenced on July 10, 1995.

At the time of the sentencing hearing, Margiotti was serving a sentence of thirty days to twelve years imprisonment on a state conviction for possession of stolen property. After disputed issues were resolved, and before pronouncement of the sentence, the district judge offered defense counsel and the

government an opportunity to present arguments regarding the sentence, but initially neglected to give Margiotti an opportunity to speak. After hearing from counsel, the judge stated that he found Margiotti to have an offense level of 13 and a criminal history category of VI, resulting in a guideline range of thirty-three to forty-one months in prison. He then announced a sentence of forty-one months imprisonment, to be served consecutively with the state sentence, and to be followed by a three-year term of supervised release.

After the court announced the sentence, but before the sentencing hearing had concluded, defense counsel pointed out that Margiotti was serving his state sentence under furlough status (permitting Margiotti to live at home and work in the community under supervision) and asked the court whether it intended that Margiotti begin serving his federal sentence when he was paroled by the state. In response, the district judge stated "I'm leaving it up to the Corrections Department people, but it is my intention that he serve his sentence consecutively to whatever state sentence he has presently."

Immediately after pronouncing the sentence, the judge realized that he had failed to offer the defendant an opportunity to speak, and he asked defense counsel if Margiotti wished to speak. Margiotti and his counsel both responded that Margiotti did not wish to speak. Before the conclusion of the sentencing hearing, however, defense counsel stated:

Now, your Honor, we have one other issue, and that's the defendant did not get the opportunity to speak. And Rule 32 says the Court must afford the defendant a chance to speak, if he wants to speak.... [W]hen the Court asked the question whether he wished to speak, the Court had already given its sentence and the defendant did not wish to speak at that time because the sentence had already been pronounced. So [I] wanted to make sure of that.

The judge again asked if the defendant wished to speak and stated that he would reconsider the sentence he had just pronounced. Margiotti thereupon addressed the court, pointing out that he had recently completed a drug rehabilitation program and obtained employment and contending that a long term of incarceration would defeat the purpose of the program. In response, Judge Murtha acknowledged the defendant's efforts at rehabilitation, but explained that, based on the defendant's extensive criminal record and the seriousness of his offense, the sentence would remain as previously announced.

Immediately after the sentencing hearing, a federal detainer was lodged against Margiotti, rendering him ineligible under state law for furlough status. He was taken into state custody. On July 17, 1995, the Vermont Parole Board advised Margiotti's counsel that, as a result of Margiotti's forty-one-month federal sentence, he might not be paroled until the year 1999 or 2000. The following day—six business days after the entry of the federal judgment of conviction on the firearms possession charge—Margiotti filed a motion to correct his sentence under Federal Rule of Criminal Procedure 35(c). Margiotti claimed that in deciding that the federal sentence should run consecutively to rather than concurrently with the state sentence, the district court had proceeded under the erroneous assumption that Margiotti would be paroled into federal custody—allowing Margiotti to begin to serve his federal sentence—within one to two years. At a hearing on August 7, 1995, the district judge denied the motion, concluding that he did not have jurisdiction to take any action because more than seven days had elapsed since the imposition of the sentence. *See* Fed. R.Crim. P. 35(c); *United States v. Abreu–Cabrera*, 64 F.3d 67, 73 (2d Cir.1995) ("We have held, as have several other circuits, that the seven-day period provided for in Rule 35(c) is jurisdictional."). Judge Murtha also stated that he understood that under U.S.S.G. § 5G1.3, he "ha[d] the discretion as to whether or not the sentence should be served consecutively" and that he had intended for Margiotti to serve his federal sentence consecutively, regardless of when Margiotti made parole on his state sentence. That is, even if the district judge had jurisdiction to change the sentence imposed, he would not

have exercised his discretion to grant the relief sought by the defendant.

## II. Discussion

### A. Fed.R.Crim.P. 32(c)(3)(C)

 Before imposing a sentence, a district court must "address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence." Fed. R.Crim. P. 32(c)(3)(C). Resentencing is generally required if a court does not comply with the requirements of Rule 32. *United States v. Axelrod,* 48 F.3d 72, 72–73 (2d Cir.1995) (per curiam). Although the district judge in the instant case announced a sentence before giving the defendant an opportunity to speak, the judge immediately recognized the lapse and offered the defendant the right of allocution. After the defendant spoke, the judge gave his statements full consideration and responded by giving reasons for his decision to adhere to the previously announced sentence. By affording the defendant an opportunity to address the court and reconsidering the sentence just announced, the district judge cured his earlier mistake and complied fully with the requirements of Rule 32. In this instance, it is fair to say that the sentence was not *imposed* until after the defendant had spoken. *See United States v. Laverne,* 963 F.2d 235, 237–38 (9th Cir.1992) (finding no violation of Rule 32 where court gave defendant an opportunity to make a statement during the sentencing hearing, before the court made its final judgment but after it had made a preliminary determination regarding defendant's sentence, and gave full consideration to defendant's statement); *see also United States v. Barnes,* 948 F.2d 325, 331 n. 5 (7th Cir.1991) ("[A] trial judge, realizing after sentencing that the right of allocution has been neglected, may rectify the situation by, in effect, setting aside the sentence, reopening the proceeding, and inviting the defendant to speak.... [T]he trial court must genuinely reconsider the sentence in light of the elicited statement.") (citations omitted).

To decide in these circumstances that a judgment ought to be vacated and the case be remanded for resentencing would be tantamount to ruling that a district judge cannot correct an inadvertent and harmless mistake made in the course of a sentencing hearing. There is no reason to adopt so inflexible a rule. It would be especially inappropriate to do so at a time when district judges are already laboring under a sentencing regime that, by requiring intricate calculations and findings, necessarily complicates proceedings and increases the likelihood of technical mistakes. Sentencing is rigid and mechanistic enough as it is without the creation of rules that treat district judges as automatons. Where, as here, the technical violation of an applicable rule was promptly corrected and caused no harm, it cannot be said that there was a denial of justice.

### B. U.S.S.G. § 5G1.3(c)

Defendant challenges the district court's order that his sentence run consecutively to, rather than concurrently with, his undischarged term of state imprisonment. Defendant contends specifically that, in determining whether to impose a consecutive or concurrent sentence, the district court failed to consider the policy statement at § 5G1.3(c) of the Sentencing Guidelines, and failed to follow the methodology set forth in the application note accompanying § 5G1.3(c).

Section 5G1.3 of the Guidelines addresses whether a sentence imposed on a defendant serving an undischarged term of imprisonment should run consecutively to or concurrently with the undischarged term. Here, the relevant subsection is § 5G1.3(c), a policy statement that, as of the date of Margiotti's offense and sentencing,[1] provided in part as follows:

> [T]he sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment *to the extent necessary to achieve a reasonable incremental punishment* for the instant offense.

(Emphasis supplied.) The commentary accompanying this version of § 5G1.3(c) set

---

1. Section 5G1.3(c) was amended effective November 1, 1995.

forth a methodology for determining what constitutes a "reasonable incremental punishment":

> In some circumstances, such incremental punishment can be achieved by the imposition of a sentence that is concurrent with the remainder of the unexpired term of imprisonment. In such cases, a consecutive sentence is not required. To the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time.

U.S.S.G. § 5G1.3 application note 3.

Accordingly, U.S.S.G. § 5G1.3(c) provides that, under certain circumstances, a district court "shall" impose a sentence to run consecutively to a prior undischarged term of imprisonment. Application Note 3 to 5G1.3, however, makes clear that the district court has discretion to impose a concurrent sentence when doing so would achieve a "reasonable incremental punishment." Application Note 3 also instructs a district court to base its determination of what constitutes a "reasonable incremental punishment" on an approximation of the total punishment that would have resulted under the Sentencing Guidelines if all of the defendant's offenses were federal offenses and all of the sentences were imposed at the same time. Margiotti claims that the appropriate calculation under Application Note 3 would have prescribed a total punishment of, at most, forty-six months. Imposing a consecutive sentence, Margiotti contends, will not achieve a "reasonable incremental punishment." Because the letter from the Vermont Parole Board suggests that Margiotti may not be paroled for at least four years, and he will only then begin to service his forty-one month federal sentence, Margiotti claims that his combined state and federal sentences will far exceed what is reasonable under § 5G1.3(c) and its commentary.

At the sentencing hearing, the district court did not expressly refer to § 5G1.3(c) or Application Note 3. When the district court announced its intention to run the defendant's sentence consecutively to the undischarged state term, Margiotti's counsel inquired as to whether the district court intended for Margiotti to begin his federal term once he was paroled by the state. The district court reiterated its intention that the defendant "serve his sentence consecutively to whatever state sentence he has presently." Margiotti's counsel did not then object on the ground that the district court failed to explicitly consider § 5G1.3(c) or its accompanying commentary. As a result, the government contends that Margiotti's claim is procedurally barred.

■■■ "Generally, issues not raised in the trial court, including sentencing issues, will be deemed waived on appeal in the absence of plain errors or defects affecting substantial rights." *United States v. Liebman*, 40 F.3d 544, 551 (2d Cir.1994) (internal quotation marks omitted). We recognized an exception to this general rule "during the infancy of the Guidelines," *United States v. Rodriguez*, 943 F.2d 215, 217 (2d Cir.1991) (internal quotation marks omitted), because we believed that "when the Guidelines were new, an appellate ruling was necessary in the implementation of the complex and not easily understood sentencing scheme," *id.* Although the Guidelines are no longer in their infancy, we have held that "an exception to the general rule may still be warranted for novel or complex sentencing issues." *Liebman*, 40 F.3d at 551 (internal quotation marks omitted). Because we issued several rulings regarding the application of the relevant version of § 5G1.3(c) prior to Margiotti's sentencing, *see, e.g.*, *United States v. McCormick*, 58 F.3d 874, 877–78 (2d Cir. 1995); *United States v. Whiteley*, 54 F.3d 85, 87–92 (2d Cir.1995); *United States v. Lagatta*, 50 F.3d 125, 127–28 (2d Cir.1995), and his contentions are not particularly "novel or complex," we apply plain error analysis to his claim. *United States v. Keppler*, 2 F.3d 21, 24 (2d Cir.1993). Accordingly, we will not disturb the sentence unless the asserted error would result in "manifest injustice." *Id.*

The gravamen of Margiotti's claim is that, had the district court explicitly considered what would constitute a "reasonable incremental punishment" and followed the methodology of Application Note 3, it would have concluded that a concurrent sentence or a sentence commencing from a future date certain was appropriate in this case. We conclude that the defendant cannot meet the plain error standard here, for several reasons.

First, we have previously made clear that Application Note 3 to § 5G1.3 is advisory and not binding on district courts. *McCormick*, 58 F.3d at 878. A sentencing court "is not required to explicitly demonstrate that it engaged in the multi-count sentencing methodology established in the commentary," but must "consider the basic principle that a consecutive sentence should be imposed to the extent that it will result in a reasonable incremental penalty." *Id.* (internal quotation marks omitted). Section 5G1.3(c) simply does not require the use of any particular verbal formula or incantation. Accordingly, the district court's failure to expressly invoke § 5G1.3(c) or its accompanying commentary cannot itself suggest that the court's approach was in error.

Second, the district court's statements at the August 7, 1995, hearing on the defendant's motion to correct his sentence show beyond any possible doubt that the district court well understood its discretion to impose a concurrent sentence and chose not to do so. Indeed, the district judge specifically affirmed that, because of the nature of the federal and state offenses, he viewed a consecutive sentence as a reasonable incremental punishment, regardless of the date the defendant was ultimately paroled by the state.

Finally, in light of the fact that the date of Margiotti's parole rests within the sole discretion of the Vermont Parole Board, Margiotti simply cannot show that the imposition of a consecutive sentence will ultimately result in a total punishment that differs significantly from what the calculation in Application Note 3 would have prescribed.

In sum, in the circumstances presented, we see no error, much less plain error.

CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.