14-2508-cr(L)
*United States v. Goldberg*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of September, two thousand sixteen.

PRESENT:  JOHN M. WALKER, JR.,
          DENNY CHIN,
          RAYMOND J. LOHIER, JR.,
                    *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                    *Appellee,*

          v.                                        14-2508-cr(L)

MARK GOLDBERG,
                    *Defendant-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:               JONATHAN REBOLD, Assistant United States
                            Attorney (Karl Metzner, Assistant United
                            States Attorney, *on the brief*), *for* Preet Bharara,
                            United States Attorney for the Southern
                            District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:　　　JOHN A. CIRANDO (Bradley E. Keem, Elizabeth deV. Moeller, *on the brief*), D.J. & J.A. Cirando, Esqs., Syracuse, New York.

Appeal from the United States District Court for the Southern District of New York (Preska, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Mark Goldberg appeals a July 8, 2014 judgment of the district court, convicting him of a scheme to defraud the Internal Revenue Service (the "IRS") and the State of New York by filing fraudulent tax returns.

At his sentencing on June 30, 2014, and as reflected in the judgment, the district court sentenced Goldberg to 57 months' imprisonment, three years' supervised release, and a $300 special assessment. Also at the sentencing, the district court stated its intention to execute a consent preliminary order of forfeiture, noting that Goldberg had consented to the entry of a money judgment in the amount of $500,000 and to forfeiture of a bank check in the amount of $403,915.61, and ordered restitution in the amount of $2,597,419, comprised of payments of $2,213,412 to the IRS and $384,007 to the New York State Department of Taxation and Finance. Accordingly, the district court entered a preliminary order for forfeiture of $500,000, including a cashier's check in the amount of $403,915.61, immediately after sentencing. As noted, judgment was entered on July 8, 2014. Goldberg filed this appeal the same day.

On July 2, 2015, the district court entered a final restitution order in the amounts it had previously specified. Goldberg did not file a second or amended notice of appeal.[1]

On October 25, 2015, a motions panel of this Court granted the Government's motion to dismiss the appeal with respect to Goldberg's terms of imprisonment and supervised release and granted the Government's motion for summary affirmance with respect to Goldberg's appeal of his conviction and special assessment. The motions panel, however, denied the Government's motion with respect to summary affirmance of the restitution and forfeiture orders. Accordingly, this appeal was permitted to proceed. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal. We now turn to the restitution and forfeiture orders.[2]

---

[1]      Goldberg's notice of appeal was premature as to restitution because the final restitution order was not entered until July 2, 2015. Nevertheless, in accordance with Federal Rule of Appellate Procedure 4(b)(2), Goldberg's notice of appeal was deemed effective upon entry of the July 2, 2015 order. *See* Fed. R. App. P. 4(b)(2); *United States v. Applins*, 637 F.3d 59, 65 (2d Cir. 2011). *Cf. United States v. Tulsiram*, 815 F.3d 114, 119 (2d Cir. 2016) ("[A] judgment of conviction that imposes a sentence including incarceration and restitution is 'final' within the meaning of 28 U.S.C. § 1291, even if the sentence defers determination of the amount of restitution.").

[2]      Goldberg has filed a supplemental brief *pro se*, seeking a declaration that our prior dismissal and summary affirmance is without prejudice to his right to file, at a later date, a motion under 28 U.S.C. § 2255 claiming ineffective assistance of counsel. We decline to consider now whether Goldberg will be barred from filing a future § 2255 motion. That decision is more properly made if and when a § 2255 motion is actually filed. *Cf. United States v. Leon*, 203 F.3d 162, 164 (2d Cir. 2000) ("[A] federal court lacks jurisdiction to consider the timeliness of a § 2255 petition until a petition is actually filed" because "the exercise of federal jurisdiction . . .

## 1.    *Restitution*

We review the grant of restitution for abuse of discretion.  *United States v. Pearson*, 570 F.3d 480, 486 (2d Cir. 2009).  Factual findings underlying the restitution order are reviewed for clear error.  *United States v. Gushlak*, 728 F.3d 184, 190-91 (2d Cir. 2013).  Sentencing issues not raised in the district court are "deemed waived on appeal in the absence of plain errors."  *United States v. Margiotti*, 85 F.3d 100, 104 (2d Cir. 1996) (quoting *United States v. Liebman*, 40 F.3d 544, 551 (2d Cir. 1994)).

Under the Mandatory Victims Restitution Act (the "MVRA"), restitution is mandatory for wire fraud and certain other crimes where an identifiable victim has suffered a pecuniary loss.  *See* 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii), (c)(1)(B); *United States v. Ekanem*, 383 F.3d 40, 43 (2d Cir. 2004) (holding that the Government may be an identifiable victim).  "[R]estitution is authorized only 'for losses that [were] . . . directly caused by the conduct composing the offense of conviction and only for the victim's 'actual loss.'"  *United States v. Marino*, 654 F.3d 310, 319-20 (2d Cir. 2011) (second and third alterations in original) (quoting *United States v. Silkowski*, 32 F.3d 682, 689 (2d Cir. 1994); *United States v. Germosen*, 139 F.3d 120, 130 (2d Cir. 1998)).  The Government bears the burden of establishing the victim's actual loss by a preponderance of the evidence.  *See* 18 U.S.C. § 3664(e); *Gushlak*, 728 F.3d at 195.

---

'depends on the existence of a case or controversy, and a federal court lacks the power to render advisory opinions.'").

Goldberg challenges the restitution amount on two grounds. First, he contends that the Government failed to prove that he prepared or directed his employees to prepare each of the fraudulent tax returns. Goldberg had the opportunity to raise this argument below, but failed to do so. A *Fatico* hearing was scheduled, adjourned twice, and eventually waived by Goldberg. Accordingly, Goldberg's waiver is conclusive unless the restitution order was plain error. *See Margiotti*, 85 F.3d at 104.

There was no error here, much less plain error. The record demonstrates that Goldberg oversaw an extensive scheme to defraud the IRS and the State of New York. The district court found that Goldberg controlled an operation that he knew was filing thousands of fraudulent tax returns, he hired and trained the operation's employees, and he personally participated in the filing of fraudulent returns by obtaining IRS electronic filing identification numbers. Thus, it was not error for the district court to conclude that Goldberg's fraudulent conduct directly caused the IRS and the State of New York to suffer $2,786,894 in losses.

Second, Goldberg argues that his liability for restitution should be reduced because the IRS and the State of New York may recover sums from his clients, who received a majority of the illegal gains. The MVRA provides, however, that "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from . . . any other source be considered in determining the amount of restitution." 18 U.S.C. § 3664(f)(1)(B). Therefore, we conclude that the

district court did not abuse its discretion in ordering restitution for the full amount of unpaid taxes and interest. *See United States v. Nucci*, 364 F.3d 419, 424 (2d Cir. 2004).

We note, however, that Goldberg cannot be required to *pay* restitution that would constitute double recovery. *See* 18 U.S.C. § 3664(j)(2) ("Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered . . . for the same loss by the victim in . . . any Federal civil proceeding."). *Cf. Nucci*, 364 F.3d at 424 ("While the district judge could have made it clearer in her restitution order that [the] victim would not be allowed to receive compensation in excess of his loss, and probably should have in order to remove the question from all doubt, we will not find error for any failure to do so because . . . there is no legal basis to permit an award that allows a victim to recover more than his due."). Any adjustments will be made if and when any other participants in the scheme make payments to the IRS and the State of New York. Accordingly, we conclude that the district court did not abuse its discretion in fixing Goldberg's liability for restitution at $2,597,419.

**2.** *Forfeiture*

Goldberg did not object to forfeiture below, and we thus review the forfeiture order for plain error. *United States v. Uddin*, 551 F.3d 176, 181 (2d Cir. 2009). The district court may impose forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . 'specified unlawful activity,'" including wire fraud. 18 U.S.C. § 981(a)(1)(c); *see* 18 U.S.C. §§ 1956(c)(7), 1961(1). For

property to be traceable to an unlawful activity, the Government must establish a nexus between the forfeitable property or proceeds and the illegal activity by a preponderance of the evidence. *See* Fed. R. Crim. P. 32.2(b)(1)(A) (requiring the Government to prove "requisite nexus" for specific property); *United States v. Capoccia*, 503 F.3d 103, 116 (2d Cir. 2007).

On appeal, Goldberg challenges only the amount of forfeiture, contending that the forfeited cashier's check in the amount of $403,915.61 was not entirely traceable to the tax fraud scheme. Goldberg and the Government agreed in a Consent Preliminary Order of Forfeiture, however, that the cashier's check *was* traceable to the scheme. The district court was entitled to rely on that agreement. *See* Fed. R. Crim. P. 32.2(b)(1)(B). Moreover, the district court found that, from 2004 to 2011, proceeds of the scheme were funneled into the bank account from which the cashier's check originated. For the 2011 tax year alone, Goldberg and his employees filed approximately 2,300 facially fraudulent tax returns and deducted fees of $175 to $250 from each refund, netting them, at minimum, over four hundred thousand dollars in ill-gotten gains just for the one year. Therefore, we cannot say that the district court plainly erred in calculating the forfeiture amount. *See Uddin*, 551 F.3d at 180.

We have reviewed Goldberg's remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

- 7 -